Summers, J.
These cases, The Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Co. v. The Hamlet of North Bend and Patrick Farrell, and. The Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Co. v. The Hamlet of North Bend, present the same question. One was a suit to enjoin, the defendant below, a street railroad corporation engaged in constructing a road between Cincinnati, Ohio, and Aurora, Indiana, and through the hamlet, of North Bend, from constructing its road over, along and upon certain streets therein; and the other to enjoin the company from constructing an elevated road, from its power house to the Ohio river, over *47 and above one of the streets of said hamlet without, its consent.
In each case a temporary injunction was allowed and subsequently dissolved, and appeals were taken: to the circuit court from the order of dissolution. On appeal the circuit court stated the following conclusions of fact, as summarized by counsel for defendant in error.
“1. The plaintiff, the hamlet of North Bend, some-years prior to October 22, 1902, was organized as a hamlet under the statutes then in force relating-to the subject.
“2. Its officers were three trustees, each of whom, had been elected and qualified for a term of three years; a clerk and treasurer, elected and qualified. for a term of two years; and a marshal and supervisor, elected and qualified for a term of one year.
“3. The population of the hamlet, according to the-federal census of 1900, was 532.
“4. The secretary of state, in his proclamation made November 17, 1902, under section 2 of the new municipal code, included North Bend as a municipal corporation having a population of less than 5,000.
“5. North Bend has no other officers except such, hamlet trustees, clerk, treasurer, marshal and supervisor.
“6. North Bend has taken no steps to organize as-a village (not refused to organize as a village, as-counsel for plaintiff in error have it in their brief).
‘ ‘ 7. The finding in each case as to the grievances,, which need not be stated here at length.
‘ ‘ 8. The said electric street railroad company has-pending before the county commissioners of Hamil *48 ton county an application for authority to construct its railroad -within the limits of North Bend.
“9. The said electric street railroad company does not intend to, nor claims the right to, make such construction without the authority from said county commissioners.
“10. This application has not been acted upon by the county commissioners, who are awaiting a decision by the courts on the question of their jurisdiction over the streets in question, and will not be acted upon by them until this question is decided.
“11. The said electric street railroad company has not procured, in the one case, nor procured or attempted to procure, in the other case, from the hamlet of North Bend authority either to'construct its railroad across the streets of said hamlet, or to construct said bridge over the one particular street before mentioned.
“12. The reason for this failure to procure, or to attempt to procure, such authority from said hamlet is that said electric street railroad company is advised and claims that there is no such municipal corporation under the laws of Ohio as the hamlet of North Bend.”
That court should have found also that the defendant, in the event permission was granted to it by the county commissioners, intended to proceed with the construction of its road above and across the streets of the hamlet as averred; but it is perhaps immaterial as the case proceeded in that court, and has been argued in this, on that assumption.
The circuit court concluded as matter of law that the plaintiff was, at the time of the commencement of the suits a village and as such had capacity to bring them, and that its title in the actions should be *49 amended by substituting the word “village” for “hamlet,” and that it was entitled to the relief prayed for and it ordered and decreed that the order setting aside and dissolving the restraining order and temporary injunction should be superseded and set aside and that the restraining order and temporary injunction should be continued, and remanded the suits for further proceedings. These proceedings in error are prosecuted to reverse the order and decree of the circuit court.
The contention of counsel for plaintiff in error, “briefly stated, is, that section 231 of the new municipal code (96 O. L., 96), repealed sections 1550 and 1552, Eevised Statutes, creating hamlets and conferring powers upon them, and that on and after the first Monday of May, 1903, municipalities ceased to exist as hamlets and that they became either villages by electing village officers ■ or unincorporated villages by failure to elect, and that inasmuch as the municipality of North Bend failed to elect, the county commissioners, under section 29 of the new municipal code, have authority to grant permission to the defendant to construct its road above and on the streets of said municipality.
In support of this principal contention it is argued that hamlets had no existence under the constitution, that instrument recognizing only cities and villages and that to hold that corporations organized as hamlets became villages under the new code, but that such of them as failed to elect village officers may continue through their hamlet officers to exercise the powers of hamlets would make the code, to that extent, unconstitutional for want of uniform operation.
By the act of May 3, 1852, “to provide for the organization of cities and incorporated villages” *50 (50 O. L., 223), it is provided: “Section 1. That' all corporations which existed when the present constitution took effect, for the purposes of municipal government, either general or special, and described or denominated in any law then in force, as cities, towns, villages, or special road districts, shall be, and they are hereby organized into cities, and incorporated villages, with the territorial limits to them respectively prescribed, or belonging, in manner following: All such municipal corporations, as in any such law are denominated cities, shall be deemed cities; and those denominated towns, villages, or special road districts, shall be deemed incorporated villages; to be respectively governed as cities, or incorporated villages, and in case of the latter, for general or special purposes, as provided in this act. ’ ’
“Section 19. All municipal corporations organized, or to be organized under this act, except incorporated villages for special purposes, shall have the general powers and privileges, and be subject to the rules and restrictions granted and prescribed in the twenty succeeding sections of this act.”
“Section 40. In respect to the exercise of certain corporate powers, and to the number, character, powers and duties of certain officers, municipal corporations are, and shall be divided into the classes following: Cities of the first, and cities of the second class; incorporated villages, and incorporated villages for special purposes.”
Section 44 provided that the corporate authority of incorporated villages organized, or to be organized under this act, for the special purposes of being a road district, shall be vested in three trustees; that they should appoint a clerk and might *51 appoint a supervisor and such other officers or agents as might be necessary, and by proper by-laws and ordinances prescribe the duties and compensation of the officers so appointed; and by section 45 the trustees were given exclusive supervision and control of all public roads, streets and alleys, sewers and drains within the limits of such special road districts, and they had no other powers except such as were necessary to carry into execution those above enumerated, and they were invested with no general municipal power.
By chapter five of the municipal code of 1869 (66 O. L., 145), municipal powers in addition to those above enumerated were conferred upon incorporated villages for special purposes. By the act of May-14, 1878 (75 O. L., 161), to amend, revise, and consolidate the statutes relating to municipal corporations, for the purpose of incorporating them in the revision of the statutes of 1880, municipal corporations were divided into cities, villages, and hamlets. Cities were divided into two classes, and into seven grades, villages into two grades, and corporations organized as incorporated villages for special purposes, were named hamlets. But what’s in a name? They still had the same offices and the same powers, and no other, as when called incorporated villages for special purposes, so that if it be conceded that the constitution admits of cities and villages only as municipal corporations, it would follow that they were villages still, and the only question presented would be the one of classification. That question it is not necessary to determine. By the first act passed in compliance with the mandate of the constitution to provide for the organization of cities and villages by general laws, cities and villages were *52 classified, and for more than fifty years the power to do so was recognized by repeated decisions of this court, and if it should be affirmed that the power exists, but became impossible of exercise because of its abuses, or should be.conceded that it does not and did not exist, still, on the plainest principles of public policy, the validity of classification such as this- ought to be assumed until transition under the new code is effected.
Assuming, then, that the hamlet of North Bend had a constitutional existence, the question arises, How is it affected by the repealing sections of the new code, and the fact that it failed to elect village officers as provided by the new code! Was its life taken! Or was it permitted to live? but in a state of suspended animation; or may its officers perform their duties and thus enable it still to perform its functions as an agency of the state?
Section 231 of the new code provides: “For the purpose of carrying into effect the powers and duties • conferred and imposed upon present councils, boards of legislation, or other legislative bodies, by the provisions of this act, and for the purpose of conducting the first election to be held in every municipality hereunder, and of preparing for the change in the organization of municipalities herein provided for, this act shall take effect from and after the fifteenth day of November, 1902; and for all other purposes this act, and every portion of the same, including the repeal of existing laws, shall take effect on the first Monday in May,' 1903, and the following sections of the Revised Statutes of Ohio are hereby repealed.” Then follows in the enumeration of laws repealed section 1550, Revised Statutes, defining hamlets, section 1551, Revised Statutes, providing that a hamlet *53 shall not he organized until its territory embraces fifty electors and that it shall not be advanced to a village until it attains a population of two hundred, and section. 1,752, Revised Statutes, providing that, “municipal corporations, now or hereafter organized, are bodies politic and corporate, under the name of the city of-, the village of-, or the hamlet of-, as the case may be; and as such they may sue and be sued, contract and be contracted with,” etc.
If section 231 was the only one to be considered it might be that the municipality of North Bend would be without authority to sue, but it would not follow that it is an unincorporated village within the meaning of section 29 of the new code, and that thereunder the county commissioners have authority to grant the right to construct a street railway within the limits of North Bend. It was an incorporated municipality and whatever might be necessary for it to dp to exercise the powers of a village, it was not necessary that it be incorporated. It was the hamlet and is the village of North Bend. But section 231 is not the only section. The whole code must be considered. Section '213 provides that all officers in any municipal corporation “shall remain in their respective offices and employments and continue to perform the several duties thereof under existing laws, and receive the compensation therefor until their successors are chosen or appointed and qualified or until removed by the proper authority in accordance with the provisions of this act.”
Section 211 provides: “All by-laws, ordinances and resolutions heretofore lawfully passed or adopted by the council, board of legislation or other legislative body in any municipal corporation, and not *54 inconsistent with this act, shall remain in force until duly altered or repealed.”
Looking to these sections, as well as to section 231, it is manifest that the officers in office and whose successors were not elected or appointed when the new code went into effect remained in those offices, and not only remained, but by the new code itself are expressly enjoined to “continue to perform the several duties thereof under existing laws” until their successors are chosen or appointed and qualified.
Under the code the name of this municipality was changed to the village of North Bend and by section seven it was given power to sue, and the fact that it was mistaken in its name does not affect the suit.
In State v. Village of Perrysburg, 14 Ohio St., 472, 482, Brinkerhoff, C. J., speaking of the effect of the act of May 3, 1852, “to provide for the organization of cities and villages,” (50 O. L.. 223) supra, says: “Does the consequence follow, as claimed by the defendant that all pre-existing municipal corporations were ‘wiped out of existence,’ and all prior acts granting to them special powers or privileges became thereupon inoperative, or were, by force of this general act, repealed? We are unable to arrive at such a conclusion. Neither the corporate existence nor the corporate identity of the municipal corporations of the state were affected by the general act for the organization of cities and villages. Some of them took, under its operation, a different legal designation — as incorporated villages, instead of towns; the particular mode of their organization was somewhat changed, and their powers, privileges, rights and duties, were restricted, enlarged, or modified; but their territorial limits remained the same as before; legal obligations incurred by or to them *55 remained unchanged; and their corporate identity was no more affected by a reorganization, under the general law, than is the personal identity of a feme sole by marriage, in virtue of which her name is changed, and her powers, privileges, rights and duties, are, in law, enlarged, restricted, or modified. The corporate life of the village of Perrysburg was a continuation of the life of the town of Perrysburg. It was a continuation; not an annihilation and a recreation. ’ ’
It was stated in oral argument that the failure of this municipality to elect officers under the new code was not because of any hostility to it, but because of uncertainty as to the intention of the legislature.
Chapter 2, division 2, title 12, sections 1553 to 1571a, Revised Statutes, inclusive, providing for the organization of hamlets, and chapter 1, division 3, title 12, sections 1648 to 1654, Revised Statutes, inclusive; prescribing the officers of hamlets and some of their powers and duties, and conferring broad municipal powers upon hamlets, are not repealed by the code. The reason is not apparent. It may be doubt existed whether hamlets were municipal corporations. Incorporated villages foi-special purposes originally were not, though so classified. See comment of Ranney, J., in Street Railway v. Cumminsville, 14 Ohio St., 523, 541. But, as we have already seen, they were invested with municipal powers by the code of 1869, and by the act of 1878, were named hamlets and were properly classified as municipal corporations and given general municipal powers, and it is evident from the legislation and decisions since the constitution, as well as from the manifest purpose of section 6, of article 13, of the constitution, directing the general assembly to pro *56 vide for the organization of cities and incorporated villages by general laws, that all municipal corporations are comprised by its terms, and that outside of the system so provided there is not room for a corporation having general municipal powers.
Being a municipal corporation the hamlet of North Bend became the village of North Bend and while its hamlet officers may continue to perform their duties until their successors are elected and qualified, there is no power in the village either of election or appointment to fill these offices. The village cannot go on as a hamlet, but must sooner or’ later elect village officers or be incapable of exercising municipal powers, and want of uniformity in the-operation of the law is not apparent.
The order and decree of the circuit court in each case is,

Affirmed.

Spear, C. J., Davis, Shatjck, Price and Crew, JJ.,, concur.